IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND



| | | |
|---|---|---|
| ABIOLA D. BALOGUN-AWOSIKA | * | |
| | * | |
| v. | * | Civil No. JFM-01-1886 |
| | * | |
| UNIVERSITY OF MARYLAND | * | |
| MEDICAL SYSTEM CORPORATION | * | |

\*\*\*\*\*

MEMORANDUM

Abiola D. Balogun-Awosika has brought suit alleging that her contract as a resident in the Department of Ophthalmology at the University of Maryland was not renewed because she exercised rights pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq. Now pending before me is a motion for summary judgment by Defendant, University of Maryland Medical System Corporation ("UMMS"). For the reasons that follow, I will grant the defendant's motion.

I.

Awosika began working as a full-time resident in the Department of Ophthalmology at the University of Maryland School of Medicine in July 1999. Typically, it takes three years for a resident to complete the Department of Ophthalmology residency program. All residents enter into one-year contracts that are renewable at the end of each year. Renewal is not guaranteed and is based on satisfactory performance. (See Def. Ex. 12, Section III.) Additionally, residents are formally evaluated twice during their first year of residency.

Awosika was given her first evaluation for the period of July 1, 1999 through October 31, 1999. In this evaluation, Awosika was given several unsatisfactory or unsatisfactory/satisfactory



grades. Comments from faculty regarding Awosika's performance during the first evaluation period were summarized in writing and discussed with Awosika at a November 1999 meeting with Dr. Eve Higginbotham, Chair of the Department of Ophthalmology, and Dr. Ramzi Hemady, the Residency Program Director. The summary stated that "[m]ost of the faculty agree that Abiola's performance thus far has been below expected. Her basic medical knowledge and skills are less than desired." (Def. Ex. 6.) Additionally, the faculty recommended that: (1) Dr. Awosika be placed on academic probation; (2) specific mentors be assigned to help her formulate a study plan and improve her examination skills; (3) all faculty, clinical fellows, and residents be urged to provide her assistance; (4) she be referred to counseling through the Employee Assistance Program; and (5) periodic evaluations of her performance be conducted. (Id.; see also Awosika Dep. at 62-63, Def. Ex. 1.)

Awosika was given her second evaluation in May 2000 for the period of November 1, 1999 through February 29, 2000. Awosika again received numerous unsatisfactory/satisfactory grades and was told that she needed to improve her examination skills, her willingness to accept constructive criticism, and her relationships with other residents. (See Def. Ex. 7; Awosika Dep. at 68-69, Def. Ex. 1.) Awosika remained on academic probation following this evaluation period. (Def. Ex. 7.)

On or about July 5, 2000, the clinical faculty held a "special meeting" to discuss Awosika's progress. (See Def. Ex. 10.) Drs. Higginbotham and Hemady met with Awosika to summarize the faculty's thoughts at the meeting. Drs. Higginbotham and Hemady explained that "the majority of the faculty thought that [Awosika was] making efforts to improve [her] factual knowledge." (Id. ¶ 1.) The faculty also believed that Awosika had made significant efforts to

improve her interpersonal skills. (Id. ¶ 2.) Still, "the faculty unanimously thought that [Awosika was] still lagging in technical and examination skills" and had "performed significantly less of the procedures that are commonly performed by first year residents." (Id. ¶¶ 3, 4.) Therefore, the faculty placed Awosika on a special two-month rotation as part of her academic probation where she would be "closely supervised and assisted by the full time faculty with daily feed back." (Id. ¶ 6.)

At the end of this two-month period, the faculty decided that Awosika was "not yet ready to be promoted to the second year of residency." (Def. Ex. 11.) Although some faculty members wanted to terminate Awosika, (see Hemady Dep. at 24, Def. Ex. 3), the faculty chose to have Awosika repeat her first year of residency.

The faculty again evaluated Awosika on or about November 2, 2000. In a letter to Awosika, Dr. Hemady informed her that she had improved her knowledge base and was better prepared to answer questions during clinics and rounds. (See Def. Ex. 13.) However, the faculty was still concerned about Awosika's ability to perform certain examinations and procedures. (Id.)

In December 2000, Awosika served a rotation with Dr. Miray Bartamian Hamparian, a glaucoma fellow in the department. Following this rotation, Dr. Hamparian completed a written evaluation of Awosika and graded her a "five" on a one to nine scale. Dr. Hamparian considered a "five" a "little bit less than average" grade. (See Hamparian Dep. at 10-13, 17, Def. Ex. 14.) Dr. Hamparian concluded that Awosika did not have the skills or the knowledge to treat or diagnose glaucoma. (See id. at 16.)

On December 28, 2000, Awosika was injured during an automobile accident. As a result

of her injuries, Awosika was unable to work until February 5, 2001. Upon returning to work, Awosika continued to be treated by a physical therapist for her injuries. From February 5, 2001 until March 5, 2001, Awosika served a rotation with Dr. Hutcheson. Dr. Hutcheson asked Awosika to schedule her physical therapy appointments in the mornings or evenings so that they would not conflict with her work schedule. (Hutcheson Dep. at 36, Def. Ex. 4.) Dr. Hutcheson also concluded that Awosika was not performing at the expected level. (Id. at 37.)

On February 28, 2001, the faculty unanimously decided not to renew Awosika's residency contract. (See Higginbotham Aff. ¶ 7, Def. Ex. 2; Hutcheson Dep. at 44-46, Def. Ex. 4; Steidl Dep. at 61-62, Def. Ex. 15; Bernstein Aff. ¶ 7, Def. Ex. 16.) According to the faculty members, their decision was solely based on Awosika's lack of medical knowledge, lack of medical skills, and her questionable ability to become a competent and safe ophthalmologist. (Higginbotham Aff. ¶ 8, Def. Ex. 2; Bernstein Aff ¶ 7, Def. Ex. 16; Hutcheson Dep. at 43-44, Def. Ex. 4.) The faculty further asserted that Awosika's medical leave and physical therapy was not a factor in their decision. (See Higginbotham Aff. ¶ 9, Def. Ex. 2; Hemady Dep. at 84, Def. Ex. 3; Hutcheson Dep. at 76-78, Def. Ex. 4; Steidl Dep. at 78-79, Def. Ex. 15; Bernstein Aff ¶ 8, Def. Ex. 16.) On March 6, 2001, Drs. Higginbotham and Hemady met with Awosika to inform her of the faculty's decision. Awosika was told that the faculty was concerned about her knowledge, skills, and techniques. (See Awosika Dep. at 213-14, Def. Ex. 1; see also Def. Ex. 17.) Dr. Higginbotham and Dr. Hemady did not discuss medical leave or physical therapy appointments with Awosika at this meeting. (See Awosika Dep. at 213-14.)

II.

Awosika claims that her contract was not renewed in violation of the FMLA because she

-4-

took medical leave following her accident. "In retaliation causes of action under the FMLA, courts have applied the McDonnell Douglas burden shifting analysis applicable to Title VII retaliation claims." Raith v. Johns Hopkins Univ., 171 F. Supp. 2d 515, 519 (D. Md. 2000); see also Knussman v. Maryland, 16 F. Supp. 2d 601, 613 (D. Md. 1998), aff'd in part, vacated in part and remanded by, 272 F.3d 625 (4th Cir. 2001); cf. Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (stating in dicta that McDonnell Douglas requirements for establishing a prima facie case are applicable to an FMLA retaliation case). To establish a prima facie case, the plaintiff must show: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Knussman, 16 F. Supp. 2d at 613. Here, the first two elements are undisputed: Awosika availed herself of a protected right under the FMLA by using medical leave and she suffered an adverse action when the faculty decided not to renew her residency contract.

UMMS argues that Awosika is unable to establish a causal connection between her use of medical leave and the faculty's decision not to renew her contract. However, this argument fails because temporal proximity between a protected activity and an adverse employment action has been found sufficient to establish a causal connection. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir.1998); Carter v. Ball, 33 F.3d 450, 460 (4th Cir.1994). In this case, the decision not to renew Awosika's contract was made less than one month after she took medical leave to recover from an automobile accident. Additionally, Awosika took leave throughout February to attend physical therapy sessions. Thus, Awosika is able to establish a prima facie case of retaliation.

Nonetheless, the decision not to renew Awosika's contract is not in violation of the FMLA because UMMS has offered a legitimate, nondiscriminatory reason for its decision. Awosika's contract was not renewed because the faculty unanimously concluded that her knowledge, skills, and ability to perform procedures was unsatisfactory. Additionally, the faculty was concerned that Awosika posed a danger to her patients. (See Hemady Dep. at 81-82, Def. Ex. 3.) UMMS has provided ample evidence establishing that Awosika was not meeting the expectations of the faculty throughout her residency, including as late as December 2000 and February 2001. Unsatisfactory performance by an employee is a valid basis for an adverse employment action such as non-renewal of a contract. See, e.g., Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1229 (4th Cir.1998).

Awosika is unable to establish that UMMS' explanation is pretextual. First, Awosika points to the non-renewal letter given to Awosika at her March 6, 2001 meeting with Drs. Hemady and Higginbotham as direct evidence of pretext. The March 6, 2001 letter states in part that "[c]oncerns were raised regarding your tardiness to many clinics and operating room sessions especially during you [sic] latest Pediatrics rotation." (Pl. Ex. 5 at 1.) This statement simply does not establish pretext. Even assuming this statement is based on tardiness due to Awosika's physical therapy appointments, the statement must be read within the context of the majority of the letter which emphasizes the faculty's concerns regarding Awosika's knowledge, skills, and abilities in the operating room. The letter itself specifically states that the basis for non-renewal is "the faculty's continued concerns regarding [Awosika's] abilities as an ophthalmology resident . . ." (Id. at 2.)

Second, Awosika points to the deposition testimony of Rhonda Silva, Practice Manager

for the Department of Ophthalmology, as evidence of pretext. Silva testified that during staff meetings in January and February 2001, the faculty discussed how long Awosika would be on leave and how her leave impacted the department and her performance. (Silva Dep. at 15, Pl. Ex. 6.) Silva testified that one faculty member, Dr. Bernstein expressed anger regarding Awosika's absence by making skeptical comments and that Dr. Hemady considered Awosika's absence "questionable." (Id. at 18, 20, 22.) Silva further testified that Dr. Hutcheson expressed concern about covering for Awosika because Awosika was assigned to her during the period she was absent from work. (Id. at 25-26.) Finally, Awosika stated that Dr. Hutcheson was frustrated with the impact of Awosika's physical therapy sessions on her clinical schedule. (Id. at 27.)

Even viewing Awosika's testimony in the light most favorable to the plaintiff, it does not establish pretext. As an initial matter, it was perfectly reasonable for the faculty to discuss Awosika's absence and its effect on the department. More importantly, no reasonable juror could find pretext based on Silva's testimony because Silva was only present at meetings where department coverage was being discussed. (Id. at 14.) Silva was not present when the faculty engaged in "deep discussion" regarding residents and was asked to leave the faculty meeting when resident performance and renewal of contracts were discussed. Additionally, Silva concedes that she has no personal knowledge of why the faculty decided not to renew Awosika's contract. (Id. at 33, 50, 53-55, Def. Reply Ex. 1.) Therefore, Silva's testimony does not establish pretext.

Third, Awosika argues that her performance was in fact satisfactory. In making this argument, Awosika focuses only on portions of evaluations in which her supervising doctors

complimented her or said that she improved.[1] For example, Awosika points to the testimony of Dr. Hutcheson, noting that Dr. Hutcheson stated that Awosika's performance "somewhat improved over her time in the program." (Hutcheson Dep. at 54, Def. Ex. 4.) However, this is not evidence that Hutcheson's performance was adequate. In fact, Hutcheson testified that Awosika's performance was not adequate. (See id. at 37, 44-46.) It is not the role of the court to determine if the reasoning of the faculty was correct. Cf. DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (stating in Title VII context that "when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination"). Thus, this argument also fails to establish pretext.[2] Accordingly, summary judgment will be granted in favor of UMMS.

---

[1] Awosika also attempts to focus on her ratings. For example, Dr. Hamparian graded her a five on a nine-point scale. Awosika seeks to argue that a five out of nine is clearly satisfactory. In fact, Dr. Hamparian considered a "five" a "little bit less than average" grade. (See Hamparian Dep. at 10-13, 17, Def. Ex. 14.) It is irrelevant that other doctors considered a five satisfactory or that Awosika considers a five satisfactory.

[2] Awosika also points to materials that were submitted by the faculty during a grievance hearing on June 19, 2001. At this hearing, Dr. Hemady submitted a three-page memorandum summarizing the history of Awosika's performance as a resident. Awosika argues that the materials are evidence of pretext because they reference incidents in Awosika's first year of residency and after she was terminated, for example, the results of certain test scores that were taken in April 2001. Awosika's performance during her first year of residency and her performance on medical exams clearly could have been relevant to the grievance board in evaluating the faculty's decision not to renew Awosika's contract. Regardless, this three-page memorandum does not contradict the faculty's position that Awosika's performance was not satisfactory as of the February 28, 2001 meeting.

A separate order is being entered herewith.

Date: June 18, 2002

/s/ J. Frederick Motz
J. Frederick Motz
United States District Judge